Dear Representative Terrill,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the County Purchasing Act, 19 O.S. 2001 Supp.2005, §§ 1501-1507, limit the extent to which the members ofthe board of county commissioners may use their discretion invoting on whether to approve or disapprove a proposed countycontract?
 2. Does the county purchasing agent maintain completeauthority over purchasing contracts such that the board of countycommissioners has no authority to deliberate the propriety of acontract other than to vote to approve the contract?
 3. May the board of county commissioners employ a dataprocessing technician to assist and advise them regarding theconsideration of contracts to purchase computer equipment andcomputer-related services and make recommendations to the boardof county commissioners to approve or disapprove a contract?
 4. Is it the district attorney's duty to follow and notdisregard the opinions of the Attorney General until a judgmentof a court of competent jurisdiction relieves the districtattorney of the burden of compliance?
 Introduction
¶ 1 These questions arise from a disagreement between members of the Oklahoma County Board of County Commissioners and certain other elected Oklahoma County officials over the implementation of 19 O.S. 2001 Supp. 2005, §§ 1501-1507 (which you refer to as the "County Purchasing Act") [hereinafter "Act"] and 19 O.S. 2001, §§ 376-378[19-376-378] relating to county purchases.
¶ 2 Attached to your opinion request letter dated December 1, 2005 you included copies of legal memoranda from the Oklahoma County District Attorney, and on December 7 you sent the Attorney General another letter with a legal memorandum attached from a private attorney retained by one of the county commissioners. You asserted in your December 1 letter that "[t]he District Attorney's advice appears to be in conflict with applicable Attorney General Opinions in 2004 AG 14 and 1972 AG 162."[1] See also A.G. Opins. 04-14, 72-162 (dealing primarily with the acquisition of computers and data processing equipment by counties and the management of data processing needs).
¶ 3 Effective July 1, 2005, the Oklahoma Board of County Commissioners eliminated its county budget board (comprised of all county elected officers as authorized by 19 O.S. 2001 Supp. 2005, §§ 1401-1421).[2] This resulted in the county clerk (or his or her designee) becoming the county purchasing agent, eliminating a separate purchasing agent position which had been implemented by the former county budget board. 19 O.S. 2001, §1500[19-1500](A). Consequently, the input of elected county officers other than the county clerk as to activities of the purchasing agent is diminished.
¶ 4 When one or more departments of county government need to acquire personal property, equipment or services relating to such property, the county purchasing agent takes charge of advertising for bids, structuring contracts and procuring such items. 19O.S. Supp. 2005, §§ 1501[19-1501](A), 1505. As to data processing equipment and services, "[t]he county purchasing agent shall determine the most effective manner of handling the county's data processing needs, either by outright purchase or lease of equipment or entering into a contract for computer services, and shall offer data processing advisory service to all county elected officials." 19 O.S. 2001, § 376[19-376](B). Once bids are received, the purchasing agent delivers the sealed bids, together with information on what price is being paid by the Department of Central Services for commonly used items on behalf of the State, to the county clerk who then forwards them to the board of county commissioners ("Board"). 19 O.S. Supp. 2005, § 1505[19-1505](B)(3).
¶ 5 The Board is required to open the sealed bids in an open meeting, compare them to the state contract price, if applicable, and select the lowest and best bid based upon the availability of material and transportation cost within thirty days. Id. § 1505(B)(4). If the item is a special one not appearing on the "list of commonly used items," the official from the agency or county department requisitioning the item shall review the bids and submit a written recommendation to the Board before final approval. Id. Special steps must be taken if the lowest bid is not considered to be the "lowest and best" bid, or for special items if the recommendation of the requisitioning official is not to be followed. The statute in pertinent part provides:
 The board of county commissioners shall keep a written record of the meeting as required by law, and any time the lowest bid was not considered to be the lowest and best bid, the reason for such conclusion shall be recorded. Whenever the board of county commissioners rejects the written recommendation of the requisitioning official pertaining to a special item, the reasons for the rejection shall be entered in their minutes and stated in a letter to the requisitioning official and county purchasing agent[.]
Id.
¶ 6 Your first three questions each relate to whether the Board may exercise discretion in considering bids or proposals for purchases, and if so, what standard is to be applied.
 Approval of Contracts is a Legislative Act Requiring Discretion
¶ 7 Section 1505(B)(4) of the Act requires the Board to select the lowest and best bid on materials or services within 30 days of bid opening. Id. The Act indicates that this Board action is legislative in character, i.e., not perfunctory or ministerial. A "legislative" act by a municipal governing body is an action determining or stating policy or announcing an official position with long-lasting effect, thus requiring the exercise of discretion. See Jack's Supper Club, Ltd. v. City of Norman,361 P.2d 291, 294 (Okla. 1961); In re Initiative Petition No.27, 82 P.3d 90, 92 (Okla. 2003). The Act requires the Board to select the "lowest and best" bid on a contract and do so within the prescribed 30-day period. 19 O.S. Supp. 2005, § 1505[19-1505](B)(4). The "lowest" bid is objective, requiring only a comparison of numbers. But "best" is a different matter. To determine if one bid or bidder is "the best" necessarily involves subjective comparisons, such as performance history, ability of the provider to dedicate adequate manpower or resources and a myriad of other factors. Thus, deciding if the lowest bid is also the "best" bid requires the exercise of judgment and discretion by the members of the Board.
¶ 8 However, the exercise of discretion by members of a governing board is not unfettered. In making decisions the Board's action must have a reasonable basis, grounded on some articulable standard. If a decision between two or more options is "fairly debatable," i.e., if reasonable persons could differ as to whether the choice is a reasonable or proper one, the legislative judgment of the governing body is controlling, and courts will not interfere. Heisler v. Thomas, 651 P.2d 1330,1331 (Okla. 1982). Only where the action is arbitrary or disregards material facts bearing on the decision will a court step in by granting mandamus or other appropriate relief. Nixonv. Roberts, 420 P.2d 898, 903 (Okla. 1966); see McConnell v.Town Clerk, 704 P.2d 479, 481-82 (Okla. 1985).
¶ 9 The requirement of a "reasonableness" standard for decision making is emphasized in the Act at Section 1505(B)(4), providing that the Board must specify in writing the reason for rejecting one candidate or bid in favor of another candidate whose bid price was higher, or against the recommendation of the requisitioning agency. Thus, we conclude that in making decisions on county purchase contracts, whether it be for computers, paper clips or sign painting services, the Act confers discretion on the Board as to selection of the lowest and best provider. Such discretion must be responsibly exercised, and cannot be arbitrary, capricious or ignore relevant factors in the process. For instance, a decision based solely on personalities where a county commissioner does not happen to "like" or get along with a particular assistant prosecutor is not a sufficient reason for refusing to pay the prosecutor's lawful claims. Nixon,420 P.2d at 904.
 Factors in Deliberation of the Board ¶ 10 Nixon and other Oklahoma decisions teach that in making a decision the members of the governing body must take into consideration all relevant factors, and not make a decision based on how someone "parts his hair." In making purchasing decisions, members of a governing board should take into consideration all relevant information that is reasonably available to them.
¶ 11 You have asked, in effect, whether the recommendations of the county purchasing agent should have some overriding effect on purchasing decisions, or whether the county commissioners may consider advice from other sources. In particular, you ask whether the Board may consider the recommendations of a management information specialist or data processing technician ("MIS technician") employed by the Board under the authority of19 O.S. 2001, § 377[19-377]. In Attorney General Opinion 04-14, we distinguished between the role of a county purchasing agent and an MIS technician. Id. at 81-82. Each has an important and rather specialized role in the process of selecting data processing equipment and services, and we believe it is very important for the viewpoints of each specialist to be considered by the Board in its decision-making process. The county purchasing agent has primary responsibility to see that appropriate hardware, software and services are selected in an orderly and cost effective manner. 19 O.S. 2001, § 376[19-376](B). The MIS technician focuses on how well, or whether, the equipment will provide information and data to the county agencies that need it and do so in a secure manner. Id. In an ideal world, the county purchasing agent and the MIS technician would confer and reach some kind of consensus for recommendation to the Board. Ultimately, however, the selection of an equipment or service provider is up to the Board, acting in its sound discretion, and must not be dictated by the recommendations of either the MIS technician or the county purchasing agent.
¶ 12 While the provisions of Sections 376 and 377 of Title 19 have been amended since A.G. Opin. 72-162 was rendered, we believe many of the conclusions of this Opinion are still applicable. In pertinent part the Opinion concludes:
 The Boards of County Commissioners, when acting pursuant to the authority vested in them by Section 376, are not obligated to obtain the approval of county officials utilizing the data processing service afforded by the county in determining "the most effective manner of handling the county's data processing needs." Obviously, the Boards of County Commissioners cannot deprive an elected county official of the means required to discharge his statutory functions. On the other hand, the discretion vested in the Commissioners under Section 376 is not subject to the veto power of a given county official who may allege that his capacity to perform his statutory duties is thereby jeopardized. Where a public official abuses his discretion Oklahoma law affords an appropriate judicial remedy.
Id. at 109.
 Effect of Official Attorney General Opinions
¶ 13 Your question implies that the advice of the district attorney in this case is contrary to Attorney General Opinions 04-14 and 72-162. We do not agree. Attorney General Opinion 72-162 emphasized the discretion of the Board in selecting appropriate data processing services and equipment, but this was before Section 376 of Title 19 was extensively revised and before enactment of the County Purchasing Act. Id. at 109. Opinion 04-14 distinguished the respective roles of the county purchasing agent and the MIS technician, but did not indicate that the advice of either should be dispositive in the Board's selection process. Id. at 81-82.
¶ 14 The Oklahoma Supreme Court announced in State ex rel.York v. Turpen, 681 P.2d 763, 765 (Okla. 1984) that an Opinion of the Attorney General is binding upon the state official affected by it, and it is their duty to follow and not disregard such Opinion. This duty continues unless or until a judgment of a court of competent jurisdiction relieves the public official of the burden of compliance. Id. However, we do not read the district attorney's memorandum in this instance as departing from the conclusions of our earlier Opinions. The district attorney's memorandum emphasizes the role of the county purchasing agent in the selection process, while the private attorney's memorandum emphasizes the importance of the advice of the county's MIS technician. As stated earlier the input of each of these officers is important and should be considered by the Board in reaching a decision, but neither view is binding on the Board. The Board must exercise its discretion in a responsible and nonarbitrary manner without undue delay.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The County Purchasing Act, 19 O.S. 2001 Supp. 2005, §§ 1501 -1507, vests discretion in the board of county commissioners in determining whether to approve or disapprove a proposed county purchase contract. Id. § 1505(B)(4).
 2. Such discretion must be exercised by the board of county commissioners in a manner that is not arbitrary or capricious, with the board of county commissioners taking into consideration all reasonably available materials or opinions pertinent to the decision. Nixon v. Roberts, 420 P.2d 898, 903 (Okla. 1966); Heisler v. Thomas, 651 P.2d 1330, 1331 (Okla. 1982).
 3. The board of county commissioners may employ a data processing technician to assist and advise the board of county commissioners in making decisions on contracts to purchase computer equipment and computer-related services. 19 O.S. 2001, § 377[19-377] . The board of county commissioners may accept recommendations from such technician and from the county purchasing agent pursuant to 19 O.S. 2001, § 376[19-376] (B), but such recommendations are not binding on the board of county commissioners, which retains discretion over such purchasing decisions. 19 O.S. Supp. 2005, § 1505[19-1505] (B)(4).
 4. An Opinion of the Attorney General is binding upon the state officials affected by it, and it is their duty to follow and not disregard such Attorney General Opinion. State ex rel. York v. Turpen, 681 P.2d 763 , 765 (Okla. 1984). This duty continues unless or until a judgment of a court of competent jurisdiction relieves the public officials of the burden of compliance. Id.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] See Letter from Randy Terrill, Okla. Rep., to W.A. Drew Edmondson, Okla. Attorney General (Dec. 1, 2005) (on file with the Okla. Attorney General's Office). In essence, the private attorney's opinion concluded the board of county commissioners has complete discretion over selection of computer equipment and service providers and should accept the advice of the county's management information specialist ("MIS technician") as to the hardware, software and service most appropriate for the county's needs. See Memorandum attached to letter from Randy Terrill, Okla. Rep., to W.A. Drew Edmondson, Okla. Attorney General 2 (Dec. 7, 2005) (on file with the Okla. Attorney General's Office).
On the other hand, the Oklahoma County District Attorney's opinion emphasizes the role of the county purchasing agent who, under Section 376 of Title 19 "shall determine the most effective manner of handling the county's data processing needs, . . . and shall offer data processing advisory services to all county elected officials." See Okla. County District Attorney's Opinion attached to letter from Randy Terrill, Okla. Rep., to W.A. Drew Edmondson, Okla. Attorney General 5 (Dec. 1, 2005) (on file with the Okla. Attorney General's Office). The district attorney's opinion indicated that while the board of county commissioners has discretion to select the provider, the MIS technician and the county purchasing agent should cooperate in recommending the equipment and services most suitable for the needs of the requesting agency or agencies.
[2] See Minutes of the Bd. of County Comm'rs of Okla. County (Jan. 26, 2005), available athttp://www.oklahomacounty. org/Indexes2/list.idq?CiMaxRecordsPerPage=10CiScope= %2FcminutesCiSort=rank%5Bd%5DHTMLQueryForm=query. htmTemplateName=listCiRestriction=%22January+26%2C+ 2005%22.